UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

W. KEITH BEIGHTOL PLAINTIFF

VS. CIVIL ACTION NO. 4:08cv00010-DPJ-JCS

NAVARRE CORPORATION, INC., et al. DEFENDANTS

**ORDER**

This securities fraud action is before the Court on motion of Defendants Navarre Corporation, Inc. and Eric H. Paulson to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court, having considered the parties' memoranda and relevant authorities, finds that the motion should be granted in part and denied in part.

## I. Facts and Procedural History

According to the Complaint, Defendant Navarre Corporation, Inc. ("Navarre") and its executives made a series of misleading financial statements from 2003 through 2005 which grossly overstated the company's profits resulting in inflated stock prices during that period. In June 2005, Navarre restated its earnings for several previous quarters explaining that expenses related to Defendant Eric H. Paulson's incentive-based deferred compensation plan should have been recorded as charges to income in the fiscal quarter ending December 31, 2003; $2.5 million more in expenses were recorded for the quarter ending on June 30, 2004; and a $2.4 million tax benefit was removed from its third quarter 2005 income and added to common stock.

Plaintiff avers that he began purchasing Navarre stock in 2004, after Defendants began overstating Navarre's financial condition. By the June 2005 restatement, Plaintiff had purchased 110,000 shares, mostly at prices above $15 per share, for a total investment of $1,398,964.70. He further claims that the stock dropped dramatically following the restatement in June 2005,

and that he sold 15,000 shares at $6.22 and another 10,000 shares at $2.30 per share. Defendant currently owns eighty-five thousand shares of Navarre stock.

This is not the only securities fraud action filed against Navarre regarding these events. In 2005, a class action was filed in Minnesota district court which resulted in a settlement, but Plaintiff opted out and filed this action in February 2008, asserting violations of federal securities laws and several state law causes of action. Defendants have filed a motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Analysis

### A. Standard of Review

#### *1. Rule 12(b)(6) and Rule 9(b) Standards*

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965 (quotation marks, citations, and footnote omitted). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier v.*

*Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1966) (internal quotation marks omitted)).

Allegations of fraud or mistake, however, must be pled with particularity to survive a motion to dismiss. FED. R. CIV. P. 9(b). To satisfy Rule 9(b)'s pleading requirements, the plaintiff must allege the following elements: "a material misrepresentation or omission; a defendant with scienter concerning the fraud; reliance; damages; and loss causation." *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 532 (5th Cir. 2008).

*2. The PSLRA's Heightened Standard*

With respect to Plaintiff's securities fraud claim, the Private Securities Litigation Reform Act of 1995 (PSLRA) provides heightened pleading requirements. Under the PSLRA, a plaintiff must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b) (2006). The Supreme Court recently clarified the scienter requirement in *Tellabs, Inc. v. Makor Issues & Rights, LTD.*, finding that a complaint will survive Rule 12(b)(6) review "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." 541 U.S. 308, 127 S. Ct. 2499, 2510 (2007).

The *Tellabs* Court established three "prescriptions" for determining whether a securities fraud action survives a Rule 12(b)(6) motion to dismiss. First, as with all Rule 12(b)(6) motions, courts must accept all factual allegations in the complaint as true. *Id.* at 2509. Second, courts must "consider the complaint in its entirety, as well as other sources courts ordinarily examined when ruling on Rule 12(b)(6) motions." *Id.* Accordingly, the court's inquiry is "whether *all* of

the facts alleged, taken collectively, give rise to a strong inference of scienter." *Id*. Finally, "court[s] must take into account plausible opposing inferences" when "determining whether the pleaded facts give rise to a 'strong' inference of scienter." *Id.*

B. Section 10(b) Claim

Plaintiff alleges that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. SEC Rule 10b-5 declares it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made . . . not misleading." To state a claim under Section 10(b) and Rule 10b-5, the plaintiff must allege: "(1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately [injured him]." *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).

In proving scienter, the plaintiff must demonstrate that the defendant acted with "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 127 S. Ct. at 2507 (quotations and citation omitted). Additionally, the Fifth Circuit recognizes that a plaintiff may prove scienter through severe recklessness, which is

> limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Shaw Group, Inc.*, 537 F.3d at 533 (quoting *Rosenwieg v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003)).

"[C]ircumstantial evidence can support a strong inference of scienter, [but] allegations of motive and opportunity standing alone will not suffice." *Id.* (citations omitted). The Fifth

Circuit has also rejected the group pleading approach to scienter and looks to the state of mind of the corporate officials responsible for making the statement, rather than the collective knowledge of all corporate employees. *Id.* Accordingly, scienter is only attributed to a defendant corporation "when the requisite scienter is found for the individual officer of that corporation who made the false or misleading statements." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004). Furthermore, "a pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company." *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 432 (5th Cir. 2002).

Looking to the allegations of the Complaint, some of Plaintiff's averments focus on deviations from Generally Accepted Accounting Procedures ("GAAP") and might not, standing alone, satisfy the PSLRA. *See Barrie v. IntervoiceBrite, Inc.*, 397 F.3d 240, 264 (5th Cir.), *modified and reh'g denied,* (5th Cir. 2005) (finding that the "failure to follow GAAP, without more, does not establish scienter"). Other averments, however, go beyond mere publication of inaccurate accounting figures and rise to a level sufficient to survive a Rule 12(b)(6) motion.

*For example*, Plaintiff avers that Defendant Paulson's compensation package entitled him to three separate "awards" if the company's stock hit and maintained certain target prices. The first such target ($4.00 a share) was achieved at the end of November 2003. According to the Complaint, Paulson and Chief Financial Officer James Gilbertson knew the income had to be reported in the quarter ending December 31, 2003, but that, if reported, the company would post a significant quarterly decline in income rather than a "record" income year. Accordingly, just days after satisfying the condition for the "award," and days before the end of the reporting period, Paulson and Gilbert amended Paulson's employment contract making payment

contingent upon his adherence to a non-competition agreement. Plaintiff further claims that Paulson and Gilbert discussed the impact of the amendment on the reporting requirements. Finally, Plaintiff claims that the inflated earnings report substantially increased Paulson's opportunity to achieve the two remaining incentive stock target prices (which he did), but that a proper report would have made those targets unattainable.[1]

The alleged knowledge of Paulson and Gilbert, the timing of the amendment to the employment contract, the impact of the amendment on the company's reported income and potential for growth, and the financial incentives for Paulson in under-reporting income in the quarter ending December 31, 2003 all give rise to a strong inference of scienter. *See Shaw Group, Inc.*, 537 F.3d at 533 (noting that "[a]ppropriate motive and opportunity allegations may . . . 'meaningfully enhance the strength of the inference of scienter'") (citation omitted); *Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 661 (8th Cir. 2001) (noting that the amount of an executive's compensation package coupled with an overstatement of earnings that would increase such compensation is circumstantial evidence of motive).

The Court has considered the possible opposing inferences Defendants suggest. However, as stated in *Tellabs*, the inference of scienter "need not be irrefutable, . . . or even the most plausible competing inference." 127 S. Ct. at 2510. In this case, a reasonable juror could find Defendants' inferences no more plausible or cogent than Plaintiff's suggested inferences. *Id.* Accepting all factual allegations in the Complaint as true, and considering the Complaint in its entirety along with competing inferences, the Court finds that Plaintiff has "state[d] with

[1]Plaintiff's Complaint states these and other facts in far more particularity than is herein provided. The Court holds that Plaintiff has sufficiently specified each statement alleged to have been misleading and the reason, or reasons, why the statements were misleading.

particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b) (2006); *Tellabs*, 127 S. Ct. at 2509.

Defendants also contend that Plaintiff has not adequately linked his damages to the alleged misrepresentations. The United States Supreme Court has strictly followed the language of the statute and required plaintiffs to prove that "the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover.'" *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting 15 U.S.C. § 78u-4(b)(4)). In *Dura*, the Court found the following assertion insufficient to establish causation: "In reliance on the integrity of the market, [the plaintiffs] . . . paid artificially inflated prices for Dura securities" and the plaintiffs suffered "damage[s]." *Id.* at 340, 346. Instead, the Court required "some indication of the loss and the causal connection that the Plaintiff has in mind." *Id.* at 347.

Here, Plaintiff alleges that Defendants' scheme

> caused Plaintiff Beightol to make each of his purchases of Navarre stock . . . , caused Plaintiff to pay artificially inflated prices for that Navarre stock, caused Plaintiff Beightol to hold his ownership of Navarre stock substantially longer than he would have if he or his securities broker had known of the truth in each such respect, and caused Beightol to suffer substantial losses and damages as a result of very substantial declines in the values of Beightol's shares once those false statements were disclosed as having been falsely made and once the truth of Navarre's financial condition was revealed to investors.

Complaint ¶66. Plaintiff's Complaint also states the price he paid for the stock, avers that it sharply declined in value following the 2005 restatement, and provides the sales prices he obtained following the decline. *See Greenberg v. Crossroad Sys., Inc.*, 364 F. 3d 657, 663 (5th Cir. 2004) ("actual movement of stock price . . . must be shown"). The Court further notes Plaintiff's averment that he purchased all of his stock between the alleged under-reporting in

December 2003 and the restated reporting in 2005, which lends credence to the contention that his broker would not have recommended, and he would not have purchased, Navarre stock but for the allegedly false reporting beginning in 2003. In sum, Plaintiff has pled far more than was pled in *Dura*, and the Court finds that Plaintiff has sufficiently provided Defendants "with notice of what the relevant economic loss might be" and "the causal connection . . . between that loss and the misrepresentation." *Dura*, 544 U.S. at 347. Defendants' motion to dismiss is therefore denied as to the Section 10(b) claim.

C. State Law Claims

*1. Mississippi Securities Act*

Plaintiff conceded his claim for violations of the Mississippi Securities Act, 75-71-717(a)(2) (Rev. 2000). Defendants' motion is therefore granted.

*2. Negligent Misrepresentation and Common Law Fraud*

For the same reasons that the Court found Plaintiff's claims sufficient to satisfy the heightened pleading requirements of the PSLRA, the Court finds that he has adequately pled his claims for negligent misrepresentation and common law fraud under Mississippi law. *See Qualcomm Inc. v. Am. Wireless License Group*, 980 So. 2d 261, 274-75 (Miss. 2007) (finding fraudulent intent and causation where plaintiffs claimed that defendant's misrepresentations and omissions were the proximate cause of their damages).

*3. Unjust Enrichment*

Plaintiff claims Defendants are liable to him under an unjust enrichment theory for gains made by Navarre and Paulson. Specifically, Plaintiff seeks damages in "an amount equal to all such gains received by each defendant as a result" of their wrongful conduct. Complaint ¶ 80.

Defendants contend that the unjust enrichment claim is precluded by a decision in the previous case against Navarre and also that the claim is derivative.

Although the parties dispute whether Mississippi or Minnesota law applies to the unjust enrichment claim, the Court makes the *Erie*-guess that each state's law would produce the same result. Plaintiff's unjust enrichment claim is based solely on his status as a shareholder, and all Navarre shareholders were damaged as a result of Defendants' alleged misrepresentations and omissions. *See Bruno v. Southeastern Servs., Inc.*, 385 So. 2d 620, 621-622 (Miss. 1980) (finding that an action to redress injuries to a corporation must be brought derivatively, even when damage results to corporation and to stockholder); *Wessin v. Archives Corp.*, 592 N.W. 2d 460, 465 (Minn. 1999) (finding claims derivative where "[a]ny damage claimed by the [plaintiffs] arises only from their status as existing shareholders"); *see also Palmer v. Fox Software, Inc.*, 107 F. 3d 415, 420 (6th Cir. 1997) (affirming dismissal of direct unjust enrichment claim); *Forsythe v. Sunlife Fin., Inc.*, 417 F. Supp. 2d 100, 112 (D. Mass. 2006) (dismissing direct claims for unjust enrichment because they were derivative in nature). This claim is due to be dismissed.

## III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss should be denied in part and granted in part. Plaintiff's claims for unjust enrichment and violations of the Mississippi Securities Act are dismissed. Defendants' motion is denied as to the remaining claims.

**SO ORDERED AND ADJUDGED** this the 26th day of January, 2009.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE